UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

VICTORIA SETHUNYA,

Plaintiff,

v.

COLLEGE OF WESTERN IDAHO; ALYSON TOLMAN; JAC WEBB; and HEATHER CEROVSKI,

Defendants.

Case No. 1:24-cv-00007-AKB

**MEMORANDUM DECISION AND ORDER ON DEFENDANTS' SUMMARY JUDGMENT**

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 123). Plaintiff, Victoria Sethunya, is proceeding pro se in this case against Defendants College of Western Idaho (CWI) and its employees, Alyson Tolman, Jac Webb, and Heather Cerovski. Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motion on the record. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court grants summary judgment for Defendants.

## I. BACKGROUND

The following facts are undisputed based on the parties' statement of facts (Dkt. 123-2; Dkt. 130-1) and the record before the Court.[1] In November 2020, CWI hired Sethunya as a part-time instructor in CWI's Adult Education Department (Department) to conduct online classes in

[1] Sethunya raises many factual disputes in this case. The Court does not address each and every dispute. Rather, it addresses only the material facts for purposes of summary judgment. *See* Fed. R. Civ. P. 56(a) (requiring showing of genuine dispute of material fact to avoid summary judgment).

English as a second language (ESL) (Dkt. 123-2 ¶ 1; Dkt. 130-1 ¶ 1). In September 2021, Sethunya met with Cerovski, an employee in CWI's human resources department, to request time off from work due to anxiety and post-traumatic stress disorder (PTSD) (Dkt. 123-2 ¶ 4; Dkt. 130-1 ¶ 4). Although the parties dispute the exact timeline (*compare* Dkt. 123-2 ¶ 5, *with* Dkt. 130-1 ¶ 5), the record shows that between October 12 and 25, Sethunya submitted a "Reasonable Accommodation Request Form" regarding her PTSD; the parties communicated about her request and accommodations both by email and in person; and CWI approved her request (Dkt. 75-1 at 6–16). The approved accommodations were that CWI would provide Sethunya extra time to complete tasks as needed, detailed written instructions, extra time to ask questions, and time off work as needed (Dkt. 75-1 at 7; *see also id.* at 9–10).

In December 2021, Sethunya's supervisor, Tolman, notified Sethunya that the Department was combining two ELS classes for the next semester because they were quite small; the combined class would involve "teaching Levels 1-3"; and CWI had hired a new teacher to "co-teach" with Sethunya, although she "would do the majority of planning and teaching" because the new teacher was inexperienced (Dkt. 75-1 at 25; *see also id.* at 28). Thereafter, in January 2022, Sethunya emailed Tolman and requested training for teaching students of different skill levels on Zoom (Dkt. 123-1 at 3; Dkt. 130-1 ¶ 9).

The parties dispute the specifics of their interactions regarding Sethunya's request for training (*see, e.g.*, Dkt. 123-1 at 3-8; Dkt. 130-1 ¶¶ 10–13). The record shows, however, that between January 21 and 24, 2022, Sethunya emailed Tolman that she had previously "never taught two different ELS levels on Zoom"; Tolman responded that those students who had registered for the class were in "the same level range" as Sethunya's prior class and offered Sethunya a literacy

curriculum on teaching differing skill levels; and Sethunya replied that "the situation [was] making [her] PTSD anxiety worse" (Dkt. 75-1 at 17–19).

Then, on January 24, 2022, Tolman memorialized a meeting with Sethunya by email, including "strategies" which they had discussed to handle the teaching assignment, and Tolman copied Cerovski and Tolman's supervisor, Webb, on the email (*id.* at 28). Sethunya then emailed Tolman, Cerovski, and Webb that she "never received training on how to teach separate ESL classes on Zoom" (*id.* at 23). Later that same day, Sethunya reported to Cerovski that she was assigned to "a multilevel-zoom class" for which she has not been trained and that it had triggered "performance anxiety" (*id.* at 21–22).

In March 2022, Sethunya requested a different accommodation—an extension of time to enter her hours into the payroll system (Dkt. 123-2 ¶ 14). Cerovski denied this request (*id.*). Cerovski explained to Sethunya that CWI could not offer a payroll extension as an accommodation "because it would change the payroll dates for the entire system and cause payroll for all department employees to be untimely" (*id.*).

Meanwhile, during February and March 2022, CWI administrators began raising concerns about an approximately $10,000 budgetary shortfall for the Integrated English Language & Career Education program, which included the ESL online class that Sethunya taught (*id.* ¶¶ 15–17). CWI offered these classes at "no cost," and they "did not generate any revenue" (*id.*). After considering several potential solutions to cure the shortfall, CWI made the decision to cancel free, online ESL classes, like the one Sethunya taught, after spring semester (*id.* ¶ 18). As a result, the Department eliminated the online classes, and Sethunya did not receive any additional teaching assignments thereafter (*id.* ¶¶ 19–20; Dkt. 130-1 ¶¶ 19–20).

In January 2024, Sethunya—proceeding pro se—sued CWI, Tolman, and Webb (Dkt. 1). In her original complaint, she alleged general reliance on Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*; and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* (Dkt. 1). On April 11, 2025, Sethunya filed a motion to amend her complaint which failed to comply with the procedural rules including, for example, identifying the proposed amendments (Dkt. 37; Dkt. 41). Ruling on the motion, the Court extended the deadline for amendments and granted Sethunya additional time to file a proper motion to amend (Dkt. 41).

Sethunya then filed an amended complaint on April 21 (April 21 amended complaint) without first moving to amend (Dkt. 44). This April 21 amended complaint asserted claims against CWI, Tolman, and Webb for employment discrimination and retaliation in violation of the ADA. The Court granted the amendments in the April 21 amended complaint and ordered Sethunya to serve that complaint (Dkt. 51). Thereafter, on May 30, 2025, Sethunya filed yet another amended complaint (May 30 amended complaint) without leave of the Court (Dkt. 57).

Sethunya's May 30 amended complaint asserts different claims than her April 21 amended complaint. In the May 30 complaint, Sethunya alleges tort claims for the first time and adds Cerovski as a defendant. Specifically, the May 30 amended complaint avers claims against CWI, Tolman, Webb, and Cerovski under the ADA for failure to accommodate, retaliation, and hostile work environment (*id.* at 9–10, 11), and claims for intentional infliction of emotional distress (IIED), for negligent infliction of emotional distress (NIED), and for "spiritual and cultural harm" (*id.* at 10–11). The latter claim alleges Sethunya suffered "spiritual injury" and a violation of her "cultural identity and integrity" because CWI's website displayed her profile (*id.* at 11–12).

Defendants move for summary judgment on all Sethunya's claims (Dkt. 123). Sethunya's opposition to their motion focuses primarily on what she characterizes as "the rupture event" (Dkt. 130 at 3). She describes this event as a "rupture in [her] identity" when CWI ignored her requests to remove her profile from its website, and she claims that the "rupture marked the onset of [her] voice freeze and loss of internal auditory grounding" (*id.*). Otherwise Sethunya's opposition mostly just lists conclusory bullet points with minimal citation to the record (Dkt. 130). Regardless, the Court liberally construes Sethunya's opposition because she is proceeding pro se, and it considers her May 30 amended complaint, with one exception discussed below.

## II. LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome under governing law; a dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the responsibility of identifying portions of the record demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does so, the opposing party must then designate specific facts, supported by admissible evidence, showing that a genuine dispute exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Arguments, assertions, and unsupported allegations are not evidence. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations must be made on personal knowledge, set forth admissible facts, and show that the affiant is competent to testify. Fed. R. Civ. P. 56(c)(4). The Court may only consider facts supported by admissible evidence. *See Orr v. Bank of Am., NT & SA*, 285 F.3d

764, 773 (9th Cir. 2002). It is not required to accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

The District of Idaho's local rules reinforce these principles. A party moving for or opposing summary judgment must submit both a memorandum and a statement of disputed facts, each with pinpoint citations to the record. Dist. Idaho Loc. Civ. R. 7.1. The Court does not automatically deem unopposed factual assertions admitted; rather, it independently evaluates whether the movant's evidence establishes the absence of a genuine dispute and supports judgment as a matter of law. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B).

Because Sethunya is proceeding pro se, the Court construes her filings liberally and holds them to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Nevertheless, pro se litigants must still follow the same substantive and procedural rules as other litigants. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003). In the context of Rule 56, "an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules." *Thomas*, 611 F.3d at 1150.

## III. ANALYSIS

### A. ADA Claims

#### 1. Failure to Accommodate

Sethunya alleges Defendants failed to provide reasonable accommodations after she notified them of her PTSD diagnosis and submitted a written request for accommodations in October 2021 (Dkt. 57 ¶ 10). Sethunya, however, does not dispute that Defendants approved accommodations in response to her initial October 2021 request, including accommodations to provide her extra time to complete tasks as needed, detailed written instructions, extra time to ask

questions, and time off work as needed (Dkt. 75-1 at 7; *see also id.* at 9–10). Instead, Sethunya's summary judgment response disputes that Defendants properly engaged in the interactive process and contends that they failed to accommodate her by not training her and not granting her request for extra time to submit payroll (Dkt. 130 at 4–6). Defendants' position is that Sethunya cannot establish a genuine issue of material fact that they either failed to engage in the interactive process or failed to reasonably accommodate her (Dkt. 123-1 at 2–8).

To establish a prima facie case for failure to accommodate, Sethunya must show that (1) she is disabled within the ADA's meaning; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). To survive summary judgment on a failure-to-accommodate claim, a plaintiff must identify a reasonable accommodation that was available and would have enabled her to perform the essential functions of the position. *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006).

Defendants do not dispute that Sethunya is disabled within the ADA's meaning. They appear, however, to dispute the third element—that she suffered an adverse employment action. CWI maintains Sethunya "remains an employee of [CWI] and has never submitted a resignation letter" (Dkt. 123-2 ¶ 29). Sethunya disputes that she remains an employee, noting she has not received any "assignments" since March 2022 (Dkt. 130-1 at 4). CWI's position appears to be premised on its assertion that Sethunya remains eligible for priority hiring to fill "substitute positions" and continues to have access to her CWI employee email account and its internal job application website (Dkt. 123-2 ¶¶ 25–29).

Eligibility for employment, however, is not the same as employment. Neither party disputes that CWI eliminated the online ELS class which Sethunya taught (Dkt. 123-1 at 12 (stating "budget cuts necessitated eliminating [Sethunya's] position"); Dkt. 123-2 ¶ 19; Dkt. 130-1 ¶¶ 19–20)). When an employer eliminates an employee's position, the employee is effectively terminated. *Cf. Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351, 2018 WL 4899603, at *4, 6 (D. Ariz. Oct. 9, 2018) (noting position was eliminated due to restructuring and employment terminated); *Hawkins v. Home Depot USA, Inc.*, 294 F. Supp. 2d 1119, 1123 (N.D. Cal. 2003) (finding elimination during reorganization was legitimate, nondiscriminatory reason for termination). CWI's elimination of Sethunya's position effectively terminated her employment, and as a result, she suffered an adverse employment action.

The only issue remaining then is whether Sethunya has established the second element of the prima facie case—that she is a qualified individual able to perform the essential functions of the job with reasonable accommodation. While the parties do not directly address Sethunya's qualifications to teach an online ELS class of students with differing skill levels, Defendants argue that "training is not a reasonable accommodation"; rather, training relates to "being competent and qualified" (Dkt. 123-1 at 5).

Defendants are correct that a request for specialized training or supervision may not be a reasonable accommodation. While the ADA prohibits discrimination against a qualified individual regarding job training, 42 U.S.C. § 12112(a), it does not require an employer to provide a disabled individual training to equip her with the necessary qualifications she lacks to perform the job. As the Ninth Circuit has stated, "[t]here is no obligation for an employer to assist [an] individual to become qualified. Thus, the employer does not have to provide training so that the employee acquires the necessary skills to take the job." *Johnson v. Bd. of Trs. of Boundary Cnty. Sch. Dist.*

*No. 101*, 666 F.3d 561, 566 n.6 (9th Cir. 2011) (quoting EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, No. 915.002 at 20 (Oct. 17, 2002)); *see also Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 867 (7th Cir. 2005) ("To be sure, the ADA does not require an employer to accommodate a disabled employee by making special, individualized training or supervision available in order to shepherd the employee through what is an essential and legitimate requirement of the job.").

Here, the record reflects that Sethunya repeatedly claimed she was unable to teach the ELS class without training. For example, she testified that "it was for this particular class arrangement that I required training" (Dkt. 123-4 at 31 (111:20–21); *see also* Dkt. 75-1 at 20 ("There was no training"); *id.* at 21 ("Alyson assigned me a job for which CWI did not train me"); *id.* at 23 ("I have never received training on how to teach separate ESL classes on Zoom"); *id.* at 27 ("I felt like was [sic] being assigned an additional zoom assignment . . . for which I have not been trained and that sparked my PTSD (performance) anxiety.")). Sethunya's repeated requests for training are admissions that she did not have the requisite skills to teach the class. Accordingly, she was not qualified to perform the essential functions of the job, and as a result, her failure-to-accommodate claim fails.

Regardless, even assuming that training was a legally required accommodation and Sethunya could establish all the elements of the prima facie case for failure to accommodate, her claim still fails because the record establishes that CWI engaged in the interactive process to provide her training. Once an accommodation is requested, the employer must engage in an interactive process requiring direct communication, considering the employee's request, and offering an accommodation that is reasonable and effective. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). That duty may continue beyond the first attempted

accommodation when the employer knows the initial accommodation is failing and further accommodation is needed. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001). Liability for failure to accommodate or failure to engage in the interactive process, however, requires a showing that a reasonable accommodation was possible. *Dark*, 451 F.3d at 1088; *Zivkovic*, 302 F.3d at 1089–90.

Here, the record reflects that CWI attempted to train Sethunya in response to her requests for training. For example, Tolman met with her and provided specific strategies for teaching the class and repeatedly followed up with Sethunya to inquire about training (Dkt. 75-1 at 28). Further, the record contains numerous emails between Sethunya and CWI employees regarding training (*see, e.g.*, *id.* at 17–29). In response to CWI's inquiries about further training, Sethunya never identified any particular training that would enable her to perform the essential functions of the position. *Dark*, 451 F.3d at 1088 (noting plaintiff must identify available reasonable accommodation enabling her to perform essential functions). On summary judgment, she identifies "split Zoom training" verses "general" training (Dkt. 130-2 at 4). But she fails to explain what that training is or otherwise show it was a possible accommodation. This failure is an alternative reason that her failure-to-accommodate claim does not survive summary judgment.

Finally, CWI's refusal to allow Sethunya additional time to submit her payroll does not support a failure-to-accommodate claims. As CWI explained to Sethunya, allowing her to additional time "would impact the payroll for the entire department" and would delay the paychecks of all department employees (Dkt. 123-1 at 4). On summary judgment, Defendants argue that granting Sethunya's payroll request would have created an undue hardship and is unreasonable accommodation.

Determining whether a proposed accommodation is reasonable, "including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). In the summary judgment context, a court should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation. *Id.* Here, Sethunya does not dispute CWI's claim of undue hardship or offer evidence to the contrary. Accordingly, CWI's refusal to allow her additional time to submit payroll does not support a failure-to-accommodate claim.

**2. Retaliation**

Sethunya alleges Defendants retaliated against her because her "assignments and opportunities were diminished or withdrawn" after she requested accommodation under the ADA (Dkt. 57 ¶¶ 34–36). To establish a prima facie claim for retaliation under the ADA, a plaintiff must show that: (1) she was involved in an activity which the ADA protects; (2) the defendant subjected her to an adverse employment action; and (3) there is a causal link between the protected activity and the defendant's action. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). The *McDonnell Douglas*[2] burden-shifting rules apply to retaliation claims under the ADA. *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). "If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual." *Pardi*, 389 F.3d at 849.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Because CWI eliminated Sethunya's position after she requested reasonable accommodations and those two events were proximate in time, Sethunya has established the prima facie elements of retaliation. CWI, however, explains that it had a legitimate business reason to eliminate Sethunya's position: The program, which included online ESL classes like the one Sethunya taught, was suffering a budgetary shortfall in spring 2022; those classes did not generate revenue; and CWI made the decision to cancel them after considering other alternatives (Dkt. 123-2 ¶¶ 15–18). Sethunya disputes this explanation as the reason that CWI eliminated the class she taught (Dkt. 130-1 ¶¶ 15–20). Simultaneously, however, she admits that she "lacks knowledge to admit or deny internal budget discussions" (*id.* ¶¶ 15–17). Instead, Sethunya relies on the fact that her supervisor, Tolman, "was not included in budget emails" to dispute that CWI had a legitimate, budgetary reason for eliminating the class Sethunya taught (*id.* ¶ 15). That Tolman was not involved in the emails, however, does not create a disputed genuine issue of material fact that the program was not suffering a budgetary shortfall and that CWI's reason for eliminating Sethunya' position was pretextual. Accordingly, Sethunya's retaliation claim fails.

**3. Hostile Work Environment**

Sethunya alleges that Defendants subjected her to a hostile work environment in violation of the ADA because their "communications, conduct, and administrative decisions created a work environment that was psychologically unsafe for [her], triggering and worsening her PTSD symptoms" (Dkt. 57 ¶ 47). To challenge this claim, Defendants rely on case law addressing a hostile work environment claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (Dkt. 123-1 at 14–15). Sethunya, however, relies on the ADA for assert her hostile work environment claims (Dkt. 57 ¶¶ 46–48). Regardless, Sethunya neither responds to Defendants' Title VII argument nor otherwise addresses her ADA hostile work environment claim on summary

judgment (*see generally* Dkt. 130). Nevertheless, because Sethunya is proceeding pro se, the Court analyzes her claim under the ADA.

The Ninth Circuit has recognized that a hostile work environment claim is cognizable under the ADA in *Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024). In *Mattioda*, the court ruled that a plaintiff must show that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment. *Id.* at 1175. "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 1175–76 (citation modified) (quoting *EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir. 2005)).

The conduct must be both subjectively and objectively abusive. *Id.* at 1176. Objective hostility is assessed by looking at the totality of the circumstances through the lens of a reasonable person with the same protected characteristic. *Id.* "All the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance inform whether an environment is sufficiently hostile." *Id.* (citation modified) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *see also Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1016 (D. Ariz. 2020) (articulating elements of prima facie case), *aff'd*, No. 20-15377, 2021 WL 3667225 (9th Cir. Aug. 18, 2021).

Here, Sethunya does not identify nor does the record reveal any allegedly derogatory statements, communications, or other conduct regarding her PTSD and anxiety. *See Dollinger v. N.Y. State Ins. Fund*, 726 F. App'x 828, 831 (2d Cir. 2018) (considering only harassing communications related to disability for purposes of ADA hostile work environment claim). The evidence in the record relates primarily to communications between Sethunya and her superiors

about her performance and her request for training. As the Sixth Circuit has noted, however, "'[c]onversations between an employee and [her] superiors about [her] performance' do not create a hostile work environment 'simply because they cause the employee distress.'" *Kellar v. Yunion, Inc.*, 157 F.4th 855, 874 (6th Cir. 2025) (quoting *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998)).

Although Sethunya does not specifically identify any offense or derogatory conduct in the record related to her disability, her summary judgment response focuses on what she calls "the rupture event," which she describes as CWI's refusal to "remove her misrepresentative profile" causing her "a boundary violation," a "rupture in identity," her "voice [to] freeze," and her "loss of internal auditory grounding" (Dkt. 130 at 3). To the extent Sethunya intends to rely on these facts to support her hostile work environment claim, they fail to establish a genuine issue of material fact that Defendants harassed her based on her disability for several reasons.

First, the profile does not mention Sethunya's disability (Dkt. 43 at 7). For this reason, its display cannot be construed as harassing conduct based on her disability. *See, e.g.*, *Cooper*, 438 F. Supp. 3d at 1016 (ruling plaintiff must show harassment was based on disability). Second, Sethunya did not request Defendants remove her profile for more than three years after CWI eliminated its online ESL classes and after she filed this action (Dkt. 43 at 2–3). For this reason, her profile's display did not impact her employment conditions. *See, e.g.*, *Cooper*, 438 F. Supp. 3d at 1016 (ruling harassment must be sufficiently severe or pervasive to alter conditions of employment). Third, the record undisputedly shows that Defendants did not promptly remove Sethuyna's profile when requested because they were concerned that Sethunya would rely on its removal to assert Defendants waived, admitted, or conceded a defense (Dkt. 48 at 2; Dkt. 123-1 at 19). Although this concern may not have been well-founded, it necessarily refutes any suggestion

that CWI continued to display Sethunya's profile to harass her based on her disability. Accordingly, Sethunya's hostile work environment under the ADA fails on summary judgment.

**B. Tort Claims**

Sethunya's remaining claims are tort claims for NIED, IIED, and a "spiritual injury" that violated her "cultural identity and integrity"[3] (Dkt. 57). Defendants argue that Idaho's statute of limitations bars Sethunya's tort claims. Under Idaho law, a two-year statute of limitation applies to tort claims. Idaho Code § 5-219(4); *see, e.g.*, *Greenfield v. Smith*, 395 P.3d 1279, 1283 (Idaho 2017) (noting two-year statute of limitations applies), *abrogated on other grounds by Rich v. Hepworth Holzer, L.L.P.*, 535 P.3d 1069, 1077 (Idaho 2023).

Here, CWI effectively terminated Sethunya's employment in March 2022 when it eliminated her position. Sethunya originally filed this action in January 2024—less than two-years later and before the statute of limitations ran (Dkt. 1). She did not allege any tort claims, however, in her original complaint (*id.*). Rather, she alleges tort claims for the first time on May 30, 2025—more than two years after her termination and after the statute of limitation expired.

Sethunya does not address the statute of limitations in her summary judgment response, including whether the tort claims in her May 30 amended complaint relate back to her original complaint under Rule 15(c) of the Federal Rules of Civil Procedure. Conceivably, the relation-back doctrine may apply to avoid the conclusion that her tort claims are time-barred. "An otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading." *ASARCO, L.L.C. v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Under Rule 15, an amendment asserting a new claim relates back to the date of the original pleading if the amendment "arose out of the conduct, transaction, or occurrence set out . . . in the

[3] The Court assumes for purposes of its analysis that this latter "spiritual injury" is a cognizable tort under Idaho law, although there is no support for that assumption.

original pleading." Fed. R. Civ. P. 15(c)(1)(B). "An amended claim arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading." *ASARCO*, 765 F.3d at 1004 (citation modified). "To relate back, the original and amended pleadings must share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Id.* (citation modified).

Despite that Sethunya's tort claims may possibly relate to the common core of operative facts supporting her original claims, the Court declines to apply the relation-back doctrine under Rule 15(c). This denial is based on this case's specific and unique procedural history. The Court granted Sethunya leave to go forward with her April 21 amended complaint because she had previously filed a motion to amend and then followed it with the proposed amendment—namely the April 21 amended complaint (Dkts. 37, 44, 50). That complaint, however, did not contain any tort claims (Dkt. 44). If Sethunya had alleged tort claims in the April 21 amended complaint, the Court would have required her to make a proper showing why she should be allowed to assert otherwise time-barred claims, including against a previously unnamed defendant. Rather than relying on her April 21 amended complaint or seeking permission to file new claims not alleged in that amendment, Sethunya simply filed a *different* amended complaint on May 30 containing the new tort claims. While the Court generally construes the rules liberally in favor of a pro se litigant, the Court will not condone Sethunya's filing of unauthorized claims without its permission. Accordingly, the Court concludes her tort claims are time-barred.

**C. Final Issues**

Finally, the Court addresses three issues which Sethunya raises in her summary judgment response. First, Sethunya challenges the reliability of Dr. Melinda Jorgensen's neuropsychological examination report (Dkt. 132-8). In support, Sethunya generally lists purported errors and

inaccuracies in the report (Dkt. 130 at 9). The Court, however, did not rely on Dr. Jorgensen's report for purposes of resolving Defendants' summary judgment motion in their favor. For this reason, it does not address the report's reliability.

Second, Sethunya challenges Defendants' summary judgment motion for relying "exclusively on the original, uncorrected transcript of [her] deposition," and she argues her deposition errata raises disputed issues of material fact (Dkt. 130 at 5–6). The Court has reviewed the errata (Dkt. 130-2) and disagrees that it creates *material* issues of disputed fact. Many of the "changes" relate to the deposition's procedure and do not impact the testimony's content. To the extent the changes do relate to content, they do not raise genuine issues of material fact.

Third, Sethunya claims Defendants never responded to her requests for admissions so they are deemed admitted under Rule 36(a)(3) of the Federal Rules of Civil Procedure. Sethunya neither cites to those admissions nor moved to have them deemed admitted. Accordingly, the Court does not know either the requests' content or if they were proper requests. Moreover, the purported facts Sethunya claims are deemed admitted (*see* Dkt. 130 at 9) do not raise genuine issues of material fact.

## IV. ORDER

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Dkt. 123) is **GRANTED**.

2. The Court will enter a separate final judgment.

DATED: October 19, 2026

Amanda K. Brailsford
U.S. District Court Judge